## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MICHAEL JEROME STEVENSON, JR.**  **CIVIL ACTION NO.**
**(#1100109480)**

**VERSUS**  **20-449-BAJ-EWD**

**STATE OF LOUISIANA, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 3, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL JEROME STEVENSON, JR.**                     **CIVIL ACTION NO.**
 **(#1100109480)**

**VERSUS**                                                                     **20-449-BAJ-EWD**

**STATE OF LOUISIANA, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint of Michael Jerome Stevenson, Jr. ("Stevenson"), who is representing himself and is confined at the East Baton Rouge Parish Prison in Baton Rouge, Louisiana.[1] Based on the screening process for such complaints, it is recommended that all claims in this case be dismissed with prejudice as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

**I.    Background**

Stevenson brought this suit on July 5, 2020 against the State of Louisiana, East Baton Rouge Parish Prison ("EBRPP"), and Sid J. Gautreaux, III (collectively "Defendants") under 42 U.S.C. § 1983 alleging that Defendants violated his Fourteenth Amendment rights based on the conditions of his confinement.[2] Specifically, Stevenson complains of black mold, COVID-19 exposure, and the temperature changes in the dormitory where he is housed at EBRPP. He seeks monetary damages and injunctive relief.[3]

---

[1] R. Doc. 1.
[2] R. Doc. 1.
[3] R. Doc. 1, p. 12.

II.  **Law& Analysis**

   A. **Standard of Review**

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[4] The statutes impose similar standards for dismissal and are intended to give courts the ability to separate those claims that may have merit from those that clearly lack a basis in law or in fact. Dismissal may be made before service of process or before any defendant has answered if the court determines that the claim or action does not pass the screening process.

To determine whether a complaint fails to state a claim under §§ 1915(e) and 1915A, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff.[8] While the screening

---

[4] §1915(e) provides for dismissal of lawsuits that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"); §1915A provides for dismissal of lawsuits by prisoners against a governmental entity or employee of a governmental entity that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff. Stevenson was granted permission to proceed *in forma pauperis* on August 5, 2020, so both statutes apply. R. Doc. 5.
[5] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[7] *Id.*
[8] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

2

process does give the court the rare power to 'pierce the veil' of the factual allegations,[9] pleaded facts that are merely improbable or strange are not frivolous for purposes of screening.[10] A claim is factually frivolous only if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[11]  A claim is also subject to dismissal if it has no legal basis, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[12]

### B. Stevenson Cannot State a Claim Against the State of Louisiana or East Baton Rouge Parish Prison as a Matter of Law

Stevenson has named the State of Louisiana and the East Baton Rouge Parish Prison as Defendants.  Section 1983 creates a cause of action against "[e]very *person* who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution."[13]  Only a "person" may be sued for violation of an inmate's constitutional rights.[14]  A state is not a "person" within the meaning of § 1983.[15]  Similarly, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[16]  Accordingly, Stevenson's claims against the State of Louisiana and East Baton Rouge Parish Prison should be dismissed with prejudice as legally frivolous.

---

[9] *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).
[10] *Denton*, 504 U.S. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[11] *Denton*, 504 U.S. at 33, *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[12] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[13] 42 U.S.C. § 1983 (emphasis added).
[14] *Id.*
[15] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).
[16] *Douglas v. Gusman*, 567 F.Supp.2d 877, 892 (E.D. La. 2008), citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973); *Cullen v. DuPage County*, No. 99-1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97-0420(SS), 1997 WL 659100, at *6 (S.D.N.Y.

### C. Stevenson Cannot State an Official Capacity Claim Against Sid J. Gautreaux, III for Monetary Damages

With respect to Stevenson's claims against Sid J. Gautreaux, III, it is unclear whether Gautreaux is named in his individual or official capacity, or both. To the extent Stevenson seeks monetary damages against Gautreaux in his official capacity, section 1983 does not provide a federal forum for a litigant who seeks to recover monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[17] In addition, in *Hafer v. Melo*,[18] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit for monetary damages against a state official in an official capacity is treated as a suit against the state and is, therefore, barred by the Eleventh Amendment.[19] Accordingly, to the extent Stevenson is making a § 1983 official capacity claim for monetary damages against Gautreaux, that claim is also subject to dismissal as legally frivolous.

### D. Stevenson Fails to State a Conditions of Confinement Claim

As to Stevenson's claims regarding the conditions of his confinement, a jail official's treatment of a pretrial detainee is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment which ensures the detainee's right to be free from punishment prior to an adjudication of guilt.[20]

The appropriate standard in analyzing a constitutional challenge by a pretrial detainee depends on whether the challenge is an attack on a condition of confinement or a complaint about

---

Oct. 22, 1997); *Sponsler v. Berks County Prison*, No. 95–1136, 1995 WL 92370, at * 1 (E.D. Pa. 1995); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D. Ill. 1993).
[17] *Will*, 491 U.S. at 64.
[18] 502 U.S. 21 (1991).
[19] *Id*. at 25.
[20] *See Bell v. Wolfish,* 441 U.S. 520, 535–36.

one or more episodic acts or omissions.[21] A conditions of confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement."[22] In such case, the harm is caused by the condition or policy itself, and this is true, for example, where inadequate medical care, *as a whole,* results in intolerable conditions of confinement.[23] In contrast, if a pretrial detainee is complaining of one or more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case.[24] An episodic case is presented when the decision of an independent actor, such as a doctor or nurse, is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm.[25]

Stevenson complains about EBRPP's handling of the COVID-19 pandemic, exposure to black mold, and extreme temperature fluctuations. As this appears to be an attack on the general conditions of pretrial confinement, Stevenson's claims are analyzed under the conditions of confinement standard. To state a claim, Stevenson must show (1) "' a rule or restriction or … the existence of an identifiable condition or practice … [or] that the jail official's acts or omissions were sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [Stevenson's] constitutional rights."[26] The "reasonable relationship test in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases."[27] In applying the deliberate indifference standard, the critical question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm yet disregarded that risk by

---

[21] *Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir. 1996).
[22] *Id.*
[23] *Cf., Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (*en banc*).
[24] *Id.*
[25] *Hare,* 74 F.3d at 643.
[26] *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (citations omitted).
[27] *Id*, citing *Scott*, 114 F.3d at 54.

5

failing to take reasonable steps to stop it.[28] Specifically, a plaintiff must show that prison officials were personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and must also show that the prison officials drew the inference.[29] Additionally, the inmate plaintiff must show that the condition complained of was more than a *de minimis* violation. As to this issue, the Fifth Circuit has stated:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infection, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks …. Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs.[30]

For the reasons stated below, each of Plaintiff's claims regarding the conditions of his confinement fail as a matter of law.

### i. Stevenson Has Not Alleged that Gautreaux Personally Participated in Any of the Alleged Violations

Stevenson's only specific allegations against Gautreaux are that, when "pressured" by the media to release inmates due to COVID-19, Gautreaux stated that the courts were in control of that, although Gautreaux has opposed organizations pushing release of inmates in federal court.[31] It appears Stevenson has named Gautreaux as a defendant merely because of Gautreaux's supervisory role at EBRPP.[32] Supervisory officials may be held liable under § 1983 only if they actively participate in acts that cause the constitutional violation or implement unconstitutional policies that cause the plaintiff's injury.[33] Any allegation that a named defendant is responsible

---

[28] *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).
[29] *Id*.
[30] *Duvall*, 631 F.3d at 208, citing *Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009).
[31] R. Doc. 1, p. 7.
[32] Gautreaux is the Sheriff of East Baton Rouge Parish and is responsible for maintaining the prison.
[33] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

6

for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[34] Further, absent direct personal participation by a supervisory official in the alleged constitutional violation, an inmate plaintiff must be able to show that he was deprived of his constitutional rights has occurred because of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[35] A supervisor can be liable if he implements a policy so deficient that the policy itself may be seen as the moving force behind a constitutional violation.[36]

Stevenson has not alleged Gautreaux's personal involvement in any constitutional violations, and Stevenson has not alleged that any policy or policies were the moving force of the alleged constitutional violations, much less that any such policies were implemented by Gautreaux. Thus, Stevenson has failed to state a claim against Gautreaux in his individual capacity. Further, even if Stevenson had named an appropriate defendant, his conditions of confinement claims still fail for the reasons stated below.

### ii. Black Mold

The federal courts have recognized that certain institutional problems such as dampness, mold, and stale air do not amount to a constitutional violation.[37] Even if black mold existed and Stevenson had symptoms associated with the presence of black mold at the prison, he has not alleged that Gautreaux or any other individual knew of the serious risk of harm or intended a risk

---

[34] *See Iqbal*, 556 U.S. at 676, citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability.").
[35] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[36] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).
[37] *See, e.g., White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan. 16, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012).

7

of serious harm to his person or intentionally ignored that risk. As such, Stevenson has not stated a constitutional violation.[38] The mere the presence of mold in a prison setting does not render an inmate's confinement unconstitutional.[39]

### iii.  COVID-19

Stevenson's allegations regarding COVID-19 are to the effect that the virus existed within the EBRPP, that he believes other inmates and at least one guard in his housing area tested positive for the virus, and that he fears dying from the virus.[40] The mere presence of the coronavirus in an institution does not state a claim of constitutional dimension. Further, even if prison officials actually knew of a substantial risk to inmate health or safety, they may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.[41] As this Court and numerous other federal courts have recognized, the COVID-19 pandemic has caused a global crisis and poses extraordinary and unique public health risks, which are particularly pronounced in jails.[42] Prison officials are undoubtedly aware of the serious risk COVID-19 poses to the incarcerated population, including Stevenson. Thus, the pertinent question becomes whether officials have responded reasonably to the risks presented by COVID-19.

---

[38] *See McCarty v. McGee*, No. 06-113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

[39] *See, e.g., Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) ("the presence of black mold in living areas, eating areas, and shower areas" are "no more than a *de minimis* level of imposition with which the Constitution is not concerned.").

[40] R. Doc. 1, pp. 5-9.

[41] *Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

[42] *See, e.g., Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *3 (N.D. Tex. May 20, 2020); *Gumns v. Edwards*, Civil Action No. 20-231, 2020 WL 2510248, *1 (M.D. La. May 15, 2020).

The Northern District of Texas recently analyzed a case under similar facts. In *Blake v. Tanner*, the plaintiff complained that the facility in which he was housed refused to follow COVID-19 guidelines; specifically, the plaintiff complained that staff refused to facilitate social distancing and complained regarding the wearing of masks.[43] The *Blake* court found that the plaintiff had not put forth facts to indicate the defendants had responded unreasonably to the COVID-19 pandemic.[44]

In *Williams-Bey v. Smith*, another claim similar to Stevenson's was considered and dismissed as frivolous pursuant to 28 U.S.C. § 1915A.[45] The *Williams-Bey* court noted its understanding of the plaintiff's legitimate concern regarding COVID-19 but found that his general allegations did not support a plausible inference that any defendant had failed to take reasonable measures presented by the coronavirus pandemic.[46] Here, Stevenson has provided similar allegations with nothing to indicate that any prison official responded unreasonably to the risks presented by COVID-19. Rather, Stevenson acknowledges that, early on, his dorm was locked down "because of coronavirus."[47] Though Stevenson has provided conclusory allegations that the Warden of EBRPP testified in another case that EBRPP is inhumane and that inmates were unable to practice social distancing, the inability to perfectly practice social distancing is insufficient to state a claim.[48]

The Eleventh Circuit recently analyzed a claim challenging the conditions of confinement with respect to COVID-19 at a Florida detention center and, taking into account the measures taken

---

[43] *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *1 (N.D. Tex. May 20, 2020).
[44] *Id.* at *3-4.
[45] *Williams-Bey v. Smith*, Civil Action No. 20-828, 2020 WL 1954140, (N.D. Ohio Apr. 23, 2020).
[46] *Id.*, *2.
[47] R. Doc. 1, p. 6.
[48] R. Doc. 1, p. 8.

9

in response to COVID-19, found that the plaintiffs were unlikely to succeed on the merits of their claim when analyzing their request for preliminary injunction. The court noted aptly as follows:

> We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by "doing their best." Because the defendants "act[ed] reasonably," they "cannot be found liable" under the Eighth Amendment.[49]

The circumstance here is similar. The mere fact that social distancing is not perfectly attainable in a correctional setting does not demonstrate that any potential defendant is acting unreasonably with respect to the risks associated with the spread of COVID-19.[50] This is particularly true where Stevenson has acknowledged that his dorm was on "lock down" at one point due to the pandemic and that inmates who tested positive were removed from Stevenson's dorm.[51] The unique challenges presented in managing a pandemic in an institutional setting are abundantly evident, and Stevenson has not provided allegations to indicate that any official acted unreasonably with respect to the pandemic. Moreover, Stevenson cannot state a constitutional claim solely due to his fear[52] of contracting COVID-19.[53]

### iv. Temperature Fluctuations Do Not Rise to the Level of a Constitutional Violation

Turning to Stevenson's complaints regarding the fluctuations in temperature, although exposure to extreme heat or cold is actionable under certain circumstances, Stevenson's allegations in this case fall short of what is required to establish a constitutional violation, particularly in the absence of any evidence of harm or medical complication. For example, in *Johnson v. Texas*

---

[49] *Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).
[50] R. Doc. 1, p. 8. Plaintiff alleges that prisoners at the EBRPP are unable to practice social distancing.
[51] R. Doc. 1, p. .6
[52] R. Doc. 1, p. 9.
[53] *See Newton v. Louisiana Department of Corrections*, 2020 WL 1869018, *2 (W.D. La. April 13, 2020), citing *United States v. Clark*, 2020 WL 1446895 at *3 (D. Kan. March 25, 2020)); *United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. March 25, 2020); *Jackson v. Walz*, 2020 WL 1442641 (D. Minn. March 24, 2020); *Carter v. Santa Fe Adult Det. Ctr.* 2020 WL 1550888 (D.N.M. Apr. 1, 2020).

*Board of Criminal Justice*,[54] the United States Court of Appeal for the Fifth Circuit upheld a dismissal, as frivolous, of an inmate plaintiff's claims, finding that his allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times."[55] Similarly, the Fifth Circuit has held that purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right.[56] Here, Stevenson complains that in spring 2020, the air conditioner "broke" and "it became real hot."[57] These allegations are wholly conclusory and insufficient to state a claim of constitutional dimension.[58]

Nor has Stevenson alleged exposure to the type of extremely cold conditions that have been deemed a denial of the minimal measure of life's necessities.[59] Stevenson's general complaints

---

[54] 281 Fed.Appx. 319 (5th Cir. 2008).
[55] *Id.* at 321. *See also Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (upholding summary judgment in favor of the defendants where the inmate plaintiff alleged that excessive heat at Camp J at LSP aggravated his medical condition but where he "failed to present medical evidence of any significance" to support that assertion); *Ventry v. Gusman*, 2012 WL 1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation" and where his claim regarding the aggravation of his medical condition was "speculative at best"); *Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. March 29, 2012) (same).
[56] *See Johnson v. Thaler*, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiffs' conclusory "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").
[57] R. Doc. 1, p. 4.
[58] *See Johnson v. Texas Bd. of Criminal Justice*, 281 Fed.Appx. 319, 321 (5th Cir. 2008) (allegations regarding extreme heat failed to state a viable claim). While Stevenson does allege that he "continued to get sick over and over" during this time frame (R. Doc. 1, p. 5), there is no explanation of what caused his illness, and it does not appear from the complaint that any illness was related to temperature. He also references that, in this time frame, an inmate in the same dorm tested positive for COVID-19. As noted above, isolated examples of illness or a showing that there was an incidence of diseases or infection are not sufficient to show that the condition complained of is more than a *de minimis* violation, even if it was the heat that caused Stevenson's illness. *See Duvall*, 631 F.3d at 208, citing *Shepherd*, 591 F.3d at 454.
[59] *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); *Alex* v. *Stalder,* 225 Fed.Appx 313, 314 (5th Cir. 2007) (reciting prisoner's nonfrivolous Eighth Amendment allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk").

that during the winter of 2019 through 2020 it was "very cold" and he "had to walk around with blankets"[60] simply do not rise to the level of a constitutional violation.[61] Accordingly, these claims are subject to dismissal.

### E. Exercise of Supplemental Jurisdiction Should Be Declined

Finally, to the extent Stevenson allegations may be interpreted as asking the Court to exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[62] Having recommended that Stevenson's federal claims be dismissed, it is further recommended that the Court decline to exercise supplemental jurisdiction over potential state law claims.

### F. Stevenson Should Not Be Given an Opportunity to Amend

"Ordinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed."[63] "Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case,"[64] and leave to amend is not required when an amendment would be futile, *i.e.*, "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion.'"[65]

---

[60] R. Doc. 1, p. 4.
[61] *See Johnson*, 281 Fed.Appx. at 321 (conclusory allegations regarding cold insufficient to state a claim of a sufficiently serious deprivation that denied the minimal civilized measure of life's necessities). It should be noted that Stevenson specifically states he had a blanket (R. Doc. 1, p. 4). Thus, Stevenson's claim is factual distinguishable from cases where a court has found that a constitutional claim has been stated for exposure to extreme cold because the inmate plaintiff was denied a blanket and/or clothing. *See, e.g.*, *Alex*, 225 Fed.Appx. at 314 (Eighth Amendment claim stated where inmate was left in cold conditions for an extended period wearing nothing but a paper gown).
[62] 28 U.S.C. § 1367.
[63] *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted).
[64] *Id.*
[65] *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016), citing *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).

Here, Stevenson's complaints are easy to understand, and he appears to have pleaded his best case. He simply has not alleged facts to indicate that amendment of his claims would result in an ability to state a § 1983 claim related to the conditions of his pretrial confinement. Accordingly, Stevenson's Complaint should be dismissed without an opportunity to amend.

## RECOMMENDATION

**IT IS RECOMMENDED** that Plaintiff Michael Jerome Stevenson, Jr.'s federal claims against the State of Louisiana, East Baton Rouge Parish Prison, and Sid J. Gautreaux, III be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A,[66] that the Court decline to exercise supplemental jurisdiction over Stevenson's potential state law claims, and that this case be **CLOSED**.

**IT IS FURTHER RECOMMENDED** that leave to amend be denied, if sought, as it does not appear that Stevenson can state a claim based on the facts alleged.

Signed in Baton Rouge, Louisiana, on January 3, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[66] Michael Jerome Stevenson, Jr. is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Should this Report and Recommendation be adopted, the Ruling in this matter will constitute a strike.